IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

R&R PACKAGING, INC.
d/b/a R&R SOLUTIONS                                                        PLAINTIFF

v.                                    Case No. 5:12-cv-05215-PKH

J.C. PENNEY CORPORATION, INC.                                          DEFENDANT

<u>**MEMORANDUM OPINION AND ORDER**</u>

Currently before the Court are Defendant J.C. Penney Corporation, Inc.'s ("J.C. Penney")
Motion to Dismiss or, in the Alternative, Motion to Transfer (Doc. 7), and Amended and Substituted
Memorandum Brief (Doc. 9); Plaintiff R&R Packaging, Inc.'s ("R&R") Response to Motion to
Dismiss (Doc. 10); and J.C. Penney's Reply Brief (Doc. 12).  For the reasons set forth below, the
Court finds that J.C. Penney's Motion to Dismiss, or in the Alternative, Motion to Transfer should
be DENIED.

**I.      Background**

This action arises out of a Product and Services Agreement ("Agreement") between R&R
and J.C. Penney covering certain products and services provided by R&R to J.C. Penney.  R&R is
an Arkansas corporation with its principal place of business in Gravette, Arkansas.  R&R provides
information technology solutions and roll-out services nationwide.  J.C. Penney is a Delaware
corporation with its principal place of business in Plano, Texas.  J.C. Penney operates retail stores
nationwide, including in the state of Arkansas.

In the Agreement dated April 13, 2012, R&R contracted to install data and electrical cable,
routers, firewalls, switches, and access points in J.C. Penney's store locations across the country to

-1-

support its Network and Wireless Infrastructure Refresh Project ("Project"). The Agreement, in effect, required R&R to provide services in virtually every state of the United States. (Doc. 10-1, ¶ 8). The total amended contract price for all services provided by R&R was $9,023,102.08. (Doc. 1, ¶ 11). R&R alleges that it performed its obligations and timely invoiced J.C. Penney for all labor and materials for work performed under the Agreement. R&R alleges that through July 22, 2012, J.C. Penney had only remitted $5,068,494.33, leaving an amount due of $3,954,607.75, which R&R alleges is due and owing under the Agreement.

R&R's Complaint alleges three causes of action against J.C. Penney for its failure to pay the amount due. First, R&R alleges a claim for breach of contract for J.C. Penney's failure to fulfill its obligations under the Agreement. Second, R&R alleges a claim for violation of the Arkansas Deceptive Trade Practices Act ("ADTPA"), asserting that J.C. Penney engaged in deceptive, unconscionable business practices. Third, R&R alleges a claim for unjust enrichment asserting that R&R conferred benefits on J.C. Penney through work performed, and it would be inequitable for J.C. Penney to retain the benefits without paying for them. R&R seeks compensatory and consequential damages in an amount exceeding $4,000,000, an award of punitive damages in an amount of three times the compensatory damages, an award of attorney's fees, and other relief.

J.C. Penney moves to dismiss this action on the basis of improper venue, arguing that the Agreement contains a forum selection clause that requires the parties to litigate their disputes in a Texas state or federal court. The forum selection clause in Article 14 of the Agreement states:

APPLICABLE LAW

THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS WITHOUT REGARD TO CONFLICT OF LAW ISSUES. THE PARTIES HEREBY SUBMIT

TO THE JURISDICTION AND VENUE OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, OR THE DISTRICT COURTS OF COLLIN COUNTY, TEXAS FOR THE PURPOSE OF RESOVING [sic] DISPUTES ARISING UNDER THIS AGREEMENT.  ALL PARTIES AND THEIR SUCCESSORS WAIVE A TRIAL BY JURY OF ANY OR ALL ISSUES ARISING IN ANY ACTION OR PROCEEDING BETWEEN THE PARTIES HERETO OR THEIR SUCCESSORS UNDER OR CONNECTED WITH THIS AGREEMENT, OR ANY OF ITS PROVISIONS.

(Doc. 9-1, p. 4).

The parties have submitted conflicting affidavits as to what they intended when they entered into this provision of the contract.  Dan Reukema, a J.C. Penney employee who is familiar with the allegations in the lawsuit, states that "jcp intended for any and all disputes under the Products & Services Agreement . . . be resolved in either the United States District Court for the Northern District of Texas in Dallas, or in State Court in Collin County, McKinney, Texas." (Doc. 9-2, ¶5). On the other hand, John Rambadt, the president and co-owner of R&R, states that "JCP and R&R did not negotiate or have any specific discussions regarding any requirement that litigation be exclusively maintained only in the state of Texas.  Further, it was not R&R's intent to agree to litigate any dispute exclusively in the state of Texas."  (Doc. 10-1, ¶ 4).

J.C. Penney moves in the alternative to transfer this action to the United States District Court for the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. §1404(a).[1]  (Doc. 7).  One basis for this Motion to Transfer is that the conduct complained of, the non-payment of invoices, occurred in Texas.  The affidavits submitted by both parties provide little information as to where goods and services were delivered and performed.  The affidavit of Dan Reukema states that J.C.

---

[1] Before J.C. Penney filed its Motion to Dismiss, or in the alternative, Motion to Transfer (Doc. 7), J.C. Penney filed an action against R&R involving the same dispute at issue in the instant matter in the District Court of Collin County, Texas. That case has since been removed by R&R to federal court in the Eastern District of Texas (4:12-cv-00730-RC-ALM).

Penney's witnesses who have information about performance of the contract are located in the Dallas-Fort Worth, Texas area.  The affidavit further states that $1.6 million in liens were placed on 310 J.C. Penney stores by a company located in the Dallas-Fort Worth area that has not been paid for work performed in connection with the Project.  There is no mention of where those stores are located.  The affidavit of John Rambadt states that R&R's management of the contract involves persons who primarily reside in Northwest Arkansas.  The affidavit further states that the work performed under the contract had no primary connection to Texas, and that goods and services were performed in virtually every state in the United States.  Representatives of both parties state in their respective affidavits that it would be a hardship for their employees to have to litigate this action in a distant forum.

Based on the Complaint and the affidavits of the parties, this appears to be a contract dispute over goods and services provided by an Arkansas-based company for a nationwide retailer at store locations throughout the United States.  The nature of the work performed appears to have been the delivery of goods and services by R&R employees at its home office in Arkansas, and at J.C. Penney store locations nationwide.  J.C. Penney employees appear to have been involved in managing the contract from J.C. Penney's home office in Plano, Texas.  The books and records  that J.C. Penney maintained on this contract are kept at the home office in Plano, Texas.  According to the affidavit of Dan Reukema, the third party who has filed liens on J.C. Penney store locations is supervising the placement of those liens from its office in the Dallas-Fort Worth area.

## II.    Standard of Review

The Court first notes that "there is some controversy as to whether [Federal] Rule [of Civil Procedure] 12(b)(3) or 12(b)(6) is the proper vehicle for bringing a motion to dismiss based on

improper venue when the issue turns on a forum selection clause in the parties' underlying contract."[2] *Rainforest Café, Inc. v. EklecCo, L.L.C.*, 340 F.3d 544 n.5 (8th Cir. 2003) (identifying a circuit split and leaving the question open in the Eighth Circuit). In this case, the Court will assume that Rule 12(b)(3) may be a proper vehicle for bringing a motion to dismiss that relies upon enforcement of a forum selection clause. However, because evaluation of whether dismissal is proper in this case turns on the interpretation of the Agreement between the parties and not on a strict venue-based analysis under 28 U.S.C. § 1391,[3] the standard to be applied by the court at this stage becomes somewhat complex. Because the Eighth Circuit has not taken a position on this issues, the Court has looked to other authority for guidance. Because the Court is assuming for purposes of this case that 12(b)(3) is a proper vehicle, the Court finds that the Eleventh Circuit (which has found that dismissal based on a forum selection clause is a question of proper venue under 12(b)(3)) has adopted a well-reasoned approach to dealing with 12(b)(3) motions for dismissal in the context of forum selection clause disputes and finds that application of that approach is proper and reasonable in this case. Therefore, the Court will "consciously look beyond the mere allegations of a complaint, and, although [the Court] continue[s] to favor the plaintiff's facts in the context of any actual evidentiary dispute, [the Court] does not view the allegations of the complaint as the exclusive basis for decision." *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1239 (11th Cir.

---

[2] The parties have not addressed this issue in their briefs.

[3] In fact, J.C. Penney does not appear to claim that venue is statutorily improper. Rather, it simply relies on the forum selection clause and argues that the parties contractually agreed to an alternate forum. In the alternative, J.C. Penney requests a transfer of venue pursuant to 28 U.S.C. § 1404.

2012).[4]

## III.    Discussion

### A.       Forum Selection Clause

In this case, the parties operate under the assumption that federal law likely controls the question of whether the forum selection clause in the Agreement is enforceable.  The issue has not been affirmatively resolved by the Eighth Circuit.  *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006) (stating that the Eighth Circuit has yet to "adopt a definitive position on the issue" of whether to apply state or federal law in determining the enforceability of a forum selection clause, and declining to do so in that case due to the fact that the relevant states—including Arkansas—had adopted the federal standard); *but cf. BancorpSouth Bank v. Hazelwood Logistics Ctr.*, 2013 WL 535452 at *5 (8th Cir. Feb. 14, 2013) (citing to Missouri substantive law regarding the enforceability of a forum selection clause).  Application of federal law is appropriate in this case as the parties have not argued that application of state law would result in a materially different outcome.  *Rainforest Café, Inc.*, 340 F.3d at 546 ("Because the parties have not argued that state law would result in a materially different outcome, we indulge their suggestion that we interpret the

---

[4] The Court feels particularly comfortable addressing J.C. Penney's Motion, in this case, using the more defendant-friendly standard set by 12(b)(3) motions in general and by the Eleventh Circuit in forum selection clauses cases, because the Court still finds that venue is proper in this case even under the relaxed standard.  J.C. Penney also affirmatively moved under Rule 12(b)(3), and not 12(b)(6), without objection from R&R.  Furthermore, the Court recognizes the practical difficulties of imposing a 12(b)(6) standard in this case, since the Court would be more limited to merely scrutinizing the Complaint to determine if a "claim upon which relief can be granted" had been stated, which is not the issue at hand.  The parties have submitted materials and argued facts not raised in the pleadings, which the Court has considered—and which have been informative—in deciding the issue presented.  The Court believes that it would be unwieldy to apply the strictures of Rule 12(b)(6) in converting the instant motion to one for summary judgment in order to consider the relevant materials, solely in order to make a preliminary determination regarding whether jurisdiction can and should be exercised in this case.

forum selection clause under federal law.").

Under federal law, "[f]orum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." *M.B. Restaurants, Inc. v. CKE Restaurants, Inc.*, 183 F.3d 750, 752 (8th Cir. 1999) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). J.C. Penney argues at length that the forum selection clause is enforceable under either the federal standard or state law, as J.C. Penney asserts that both Arkansas and Texas have adopted the federal standard. The issue in this case, however, is not the validity or the enforceability of the forum selection clause, as R&R does not appear to dispute that the clause is enforceable. Rather, "[t]he dispute in this case involves the proper interpretation of the clause[], not whether enforcement of the clause[] would be unreasonable." *BancorpSouth Bank*, 2013 WL 535452 at *5 (in case in which issue was whether a forum selection clause was permissive or mandatory).

The Agreement between the parties provides that the contract will be governed and construed in accordance with Texas law without regard to conflict of law issues. Under Texas law, "[c]ontract language 'should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated.'" *Semi-Materials Co. v. MEMC Elec. Materials, Inc.*, 655 F.3d 829, 833 (8th Cir. 2011) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987)). If a contract's language can be given a certain or definite meaning or interpretation, then the contract is not ambiguous and the court will construe it as a matter of law. *El Paso Field Services, L.P. v. MasTec North Am. Inc.*, 2012 WL 6634023 at *6 (Tex. Dec. 21, 2012). "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Nat'l Union Fire Ins.*

*Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995). "Parol evidence is not admissible for the purpose of creating an ambiguity." *Id.* "Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation." *Id.*

The forum selection clause of the Agreement in this case is unambiguous, as a definite meaning can be derived from the language used in the Agreement. The Court will, therefore, construe the Agreement as a matter of law without reference to the parties' asserted interpretations.

The central issue in this case is whether the forum selection clause of the Agreement is permissive or mandatory. The Eighth Circuit has addressed a forum selection clause similar to the one at issue in this case and analyzed whether the clause was permissive or mandatory as follows:

> Unlike the immediately preceding choice of law provisions, which unambiguously mandates the application of Illinois law for the purpose of construing the contract, the forum selection clause does not employ the term 'shall.' Similarly, the forum selection clause does not use the words 'exclusive', 'only,' 'must,' or any other terms that might suggest exclusivity. With no plain language basis to support a finding of exclusivity, we do not view the forum selection clause as ambiguous. With no ambiguity, it is not necessary to resort to other principals or canons of contract interpretation . . . The forum selection clause is permissive.

*Dunne v. Libbra*, 330 F. 3d 1062, 1064 (8th Cir. 2003). The forum selection clause in that case provided "[t]his agreement shall be governed by and construed in accordance with the laws of the State of Illinois, and the parties consent to the jurisdiction to [sic] the state courts of the State of Illinois." *Id.* at 1063. Similarly, in this case the forum selection clause first unambiguously mandates that Texas law "shall" apply. The next sentence then simply provides that the parties "*submit to* the jurisdiction and venue of the United States District Court for the Northern District of Texas, Dallas Division, or the District Courts of Collin County, Texas . . . ." (Doc. 9-1, p. 4). Nowhere in the forum selection clause are the words "shall submit," "must submit," "exclusive

jurisdiction," or any other language evincing a clear intent that the clause mandate that actions be brought solely in the courts listed.  The Court finds, therefore, that the forum selection clause is permissive, not mandatory.

The Fifth Circuit, likewise, has explicitly stated "[a] party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another.  For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive." *City of New Orleans v. Mun. Admin. Servs.*, 376 F.3d 501, 504 (5th Cir. 2004) (citing *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955 (5th Cir. 1974)).  Therefore, whether the parties were to raise this issue in a federal court in either Texas or here in Arkansas, the conclusion is inevitably the same: the forum selection clause in this case is not exclusive or mandatory, and R&R is free to bring their action in this Court.

J.C. Penney recognizes that a forum selection clause may be construed as either mandatory or permissive.  While J.C. Penney does not concede that the clause in this case is permissive, it attempts to bolster its argument by asking the Court to look at the "totality" of the language in the contract as it relates to choice of law, selection of forum, and waiver of right to jury trial.  The three clauses are grouped into Article 14 of the contract, although they are separate and distinct legal issues.  J.C. Penney cites to no authority that would require the Court to transpose mandatory intent from one independent clause to another, simply because they appear in one paragraph together.  To the contrary, as outlined above, the Eighth Circuit in *Dunne* reviewed contract language that combined choice of law and forum selection clauses together in the same sentence and did not find that the mandatory choice of law provision made the forum selection provision mandatory as well.

-9-

The question of waiver of a jury trial is a separate and distinct issue for which there is a large body of law. The Court rejects the argument that language regarding a separate legal issue in the contract somehow transforms the otherwise permissive forum selection clause into a mandatory clause.

The Court concludes that the forum selection clause in the Agreement is permissive, and the clause does not preclude the bringing of lawsuits in other jurisdictions that have personal jurisdiction over the parties.

**B.** **Transfer of Venue under 28 U.S.C. § 1404(a)**

J.C. Penney moves in the alternative to transfer this action to the United States District Court for the Northern District of Texas, Dallas Division. This venue is presumably selected because the forum selection clause in the contract references the federal court in the Northern District of Texas, Dallas Division, and district courts of Collin County, Texas. The Court notes there are two pending actions between the parties concerning this dispute. This action was filed by R&R on September 21, 2012. J.C. Penney filed a Motion to Extend Time (Doc. 6) asking that it be given until October 29, 2012 to respond to Plaintiff's Complaint. According to the motion, the extension of time was agreeable with Plaintiff's counsel. The Court extended the time requested by text order. It now appears the purpose of J.C. Penney's Motion to Extend Time was so it could file a second action in a Texas state court before its response was due in this action.

On October 26, 2012, J.C. Penney filed suit against R&R Packaging in the District Court of Collin County, Texas ("the second action") involving the same dispute as this action. Three days after filing the second action in Texas, J.C. Penney filed the instant Motion to Dismiss or Transfer this case to federal court in Texas. R&R removed the second action to the United States District

Court for the Eastern District of Texas.[5]  The second action has been stayed pending a decision on J.C. Penney's Motion to Dismiss, or in the Alternative, Motion to Transfer in this case.  Ironically, the removal of the second action was to the Eastern District of Texas, although the pending motion in this case is to transfer the action to the Northern District of Texas.

Putting aside J.C. Penney's procedural "gamesmanship," the Court will now turn to the merits of the Motion to Transfer under 28 U.S.C. §1404(a).  The statute reads as follows:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district or division where it might have been brought or to any district or division to which all parties have consented.

This statute vests discretionary authority in the district court to transfer a civil action to another district based on three general categories: (1) convenience of the parties, (2) convenience of the witnesses, and (3) the interests of justice.  However, district courts are not limited to these factors, and the district court is to make a case-by-case evaluation based on the particular circumstances and consideration of all relevant factors.  *Terra Int'l Inc. v. Mississippi Chem. Corp.*, 119 F. 3d 688, 691 (8th Cir. 1997) (citing *Stewart Org. Inc. v. Ricoh Corp.* 487 U.S. 22, 29 (1988)).

In analyzing convenience in regard to a transfer of venue motion, the Court may consider (1) the convenience of the parties; (2) the convenience of the witnesses, including the willingness of witness to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony; (3) accessibility of records and documents; (4) the location where the conduct complained of occurred; and (5) the applicability of each potential forum state's substantive law.  *Id.* at 696.  In analyzing the "interests of justice," factors that may be considered include (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's

_____

[5] Collin County, Texas is located in the Eastern District of Texas, not the Northern District.

ability to enforce judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and  (7) the advantages of having a local court determine questions of local law.  *Id.*  These factors do not apply in every case, and some factors that do apply predominate over others in the transfer analysis.

In considering the "interests of justice," the Court must also take into consideration the forum selection clause.  A forum selection clause in a contract is "a significant factor that figures centrally in the district court's calculus."  *Id.* at 691 (citing *Stewart*, 487 U.S at 29).  However, a valid forum selection clause is not dispositive of the transfer analysis, and is simply a factor to be weighed.  *Id.* at 695.

J.C. Penney urges the Court to place great weight on the forum selection clause, arguing that the presence of the clause causes the burden to shift to R&R to show why it should not be bound by the contractual forum.  "In general, federal courts give considerable deference to a plaintiff's choice of forum, and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted."  *Id.*  (leaving open the question of whether the presence of a valid—and in that case seemingly mandatory—forum selection clause shifts the burden to the party opposing transfer to the contractual forum).  Even assuming burden-shifting may be appropriate in some cases based on a valid forum selection clause, the Court cannot find that shifting the burden to R&R would be appropriate in this case where the Court has already found that R&R is not bound by the clause to the exclusive jurisdiction of the contractual forum.  Rather, the forum selection clause simply remains as a factor to be weighed in considering whether the case should be transferred.

The forum selection clause in this case differs from those cases where the court has accorded "great deference" to the selection of a forum by the parties in a contract.  The authority cited by J.C.

Penney involves cases where the parties entered into a *mandatory* forum selection clause.  *Stewart Org., Inc.*, 487 U.S. at 24 (1988) ("any appropriate state or federal district court located in the Borough of Manhattan . . . *shall* have *exclusive jurisdiction* over any case or controversy . . ."); *Hodnett v. Heartland Resources, Inc.,* 2007 WL 3500053 at *1 (W.D. Ark. Nov. 14, 2007) (stating "venue and jurisdiction for all matters *shall* be in Warren County, Commonwealth of Kentucky"); *Bus. Integration Tech, Inc. v. Mulesoft, Inc.*, 2011 WL 4345723 at *1 (E.D. Mo. Sept. 16, 2011) ("jurisdiction and venue . . . *shall* be the California state and Unites States federal courts located in San Francisco, California"); *High Plains Construction, Inc. v. Gay*, 831 F. Supp. 2d 1089, 1099 (S.D. Iowa 2011) ("Any dispute . . . *shall* be subject to the *exclusive jurisdiction* of the state and/or federal courts located in Massachusetts.") (emphasis added in all).  As discussed above, the forum selection clause in this case is permissive, and Texas is not the exclusive jurisdiction for the parties to litigate their claims.  Therefore, the weight given the forum selection clause in this case should not be accorded the same weight as in a case with a mandatory forum selection clause.

J.C. Penney also relies on *In re Apple, Inc.*, 602 F.3d 909 (8th Cir. 2010) to support its argument that little deference should be given to plaintiff's choice of forum.  That case involved a foreign manufacturer who sued Apple, Inc. in the El Dorado Division of this Court.  The dispute involved conduct that occurred in foreign countries.  Neither the parties nor the witnesses had any connection to the Western District of Arkansas.  The Eighth Circuit granted a Writ of Mandamus compelling transfer of the case to the Northern District of California, stating that the "'general' practice of according deference . . . is based on an assumption that the plaintiff's choice will be a convenient one."  *Id.* at 913.  In that case, the Eighth Circuit found that "[t]he only connection between this dispute and Western Arkansas is that Luxpro chose to file it there and retained local

counsel." *Id.*  In contrast, Plaintiff R&R is an Arkansas corporation with its place of business in the Western District of Arkansas, and most of its employees work and reside in the district. The dispute also involves a contract made in the Western District of Arkansas.

In balancing the permissive forum selection clause against R&R's choice of forum, the Court gives greater weight to R&R's choice of forum.  This factor predominates in the analysis, as the other factors discussed below are somewhat evenly balanced.

The other relevant factors in the transfer analysis are the convenience of the parties and the witnesses.  Both parties have supplied affidavits stating that the witnesses having knowledge of the facts of this case live and work in the states of their respective employers.  R&R provided a lengthy list of employees living in Northwest Arkansas.  Not knowing the number of witnesses to be called by either party, a discussion of where most of the witnesses live and work would  yield little benefit to the analysis.  The Court observes that the distance between R&R's place of business and J.C. Penney's corporate office is not far in this day and age of relatively easy travel.  If a witness is not available for trial, deposition testimony can be used in place of a witness's testimony.  J.C. Penney argues that the conduct complained of, not paying invoices, occurred in Texas.  This factor is entitled to little weight since the reason for non-payment is the issue in litigation, not the fact of non-payment.

As to the other factors concerning "interests of justice," judicial economy has little impact since both federal districts have the resources to handle this litigation.   Even though J.C. Penney states its books and records  regarding this contract are located in Texas, that fact does not impact convenience or costs as most documents in litigation today are exchanged by electronic means.  The other factors—obstacles to a fair trial, conflict of law issues, and each party's ability to enforce a

-14-

judgment—have no impact in this case. This Court is competent to apply Texas law as warranted by the Agreement.

**IV.  Conclusion**

For all of the above reasons, IT IS ORDERED that Defendant J.C. Penney's  Motion to Dismiss, or in the Alternative, Motion to Transfer (Doc. 7) is DENIED.

IT IS SO ORDERED this 28th day of February, 2013.

/s/ P. K. Holmes, III

P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE

-15-