IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

R&R PACKAGING, INC. d/b/a R&R SOLUTIONS                                PLAINTIFF

v.                                        Case No. 5:12-cv-05215

J.C. PENNEY CORPORATION, INC.                                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Currently before the Court are Defendant J.C. Penney Corporation, Inc.'s ("J.C. Penney") motion to enforce contractual jury waiver and to strike Plaintiff's request for jury trial (Doc. 18) and incorporated brief in support; Plaintiff R&R Packaging, Inc.'s ("R&R") response (Doc. 27); and J.C. Penney's reply (Doc. 30) filed with leave of Court.  In support of its motion, J.C. Penney submitted the declaration of Lataunia M. Boleware and exhibits filed under seal.  In opposition to the motion, R&R submitted the declaration of Galen Bigham.  For the reasons set forth below, the Court finds that J.C. Penney's motion should be GRANTED.

I.    **Factual Background**

J.C. Penney invited vendors to bid on a project to install and replace internet access and communications facilities in over 1,000 of its retail stores across the United States.  The project was called the "Network Refresh Project" (the "Project").  J.C. Penney prepared and sent to potential bidders a Request for Proposal ("RFP") that set out the course, scope, and specifications of the Project.  The RFP included a pricing worksheet and a sample form contract called a "Products & Services Agreement" that J.C. Penney uses for the purchase and sale of services.  Bidders were asked to respond to the RFP, and J.C. Penney relied upon those responses in selecting a vendor for the Project.  R&R was the successful bidder, and J.C. Penney negotiated a contract with R&R.  The

contract between J.C. Penney and R&R was memorialized in two separate documents.

On April 13, 2012, the parties executed a Product and Services Agreement ("Agreement"), (Doc. 9-1). On June 29, 2012, the parties executed a Statement of Work ("SOW") (Doc. 10-4) that contained more specific details about the Project such as a project schedule, specifications for the work to be performed, and the pricing for the services being provided by R&R under the Agreement. The SOW had an effective date of April 23, 2012. The SOW is described in the title of the document as "Schedule A to the Agreement By and Between J.C. Penney and R&R for Network Infrastructure Refresh Statement of Work." (Doc. 10-4, p. 2). The separate documents differ in that the Agreement appears to cover general terms and conditions of the contract, while the SOW appears to cover specific duties and obligations under the contract.

The Agreement contained a waiver of jury trial in the Applicable Law provision. The provision, which also included choice of law and forum selection matters, states:

> **APPLICABLE LAW**
>
> THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS WITHOUT REGARD TO CONFLICTS OF LAW ISSUES. THE PARTIES HEREBY SUBMIT TO THE JURISDICTION AND VENUE OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, OR THE DISTRICT COURTS OF COLLIN COUNTY, TEXAS, FOR THE PURPOSE OF RESOVING [sic] DISPUTES ARISING UNDER THIS AGREEMENT. ALL PARTIES AND THEIR SUCCESSORS WAIVE A TRIAL BY JURY OF ANY OR ALL ISSUES ARISING IN ANY ACTION OR PROCEEDING BETWEEN THE PARTIES HERETO OR THEIR SUCCESSORS, UNDER OR CONNECTED WITH THIS AGREEMENT, OR ANY OF ITS PROVISIONS.

(Doc. 9-1, p. 4). The SOW does not contain any separate provisions regarding choice of law, forum selection or waiver of jury trial. The SOW does provide, however, that any ambiguity or inconsistency between the SOW and the "Master Agreement" would be resolved by giving priority

and precedence to the "Master Agreement." (Doc. 10-4, p. 4). Although "Master Agreement" is not specifically defined in the SOW, the only logical inference is that the Master Agreement is the Product and Services Agreement entered into by J.C. Penney and R&R on April 13, 2012.

J.C. Penney selected R&R for the Project and sent the contract documents to R&R for review. J.C. Penney began negotiations with R&R on the final contract documents and requested R&R's proposed changes and comments to the form Agreement. (Doc. 30, Exh. E). The parties exchanged several drafts with minimal changes to the Agreement. R&R's only major substantive point of contention was the insurance requirements, and J.C. Penney ultimately accepted R&R's proposed changes regarding those requirements. (Doc. 30, Exh. I). R&R did not suggest any changes or modifications to the "Applicable Law" provision that contained the waiver of trial by jury.

R&R filed this action in federal court, and made a demand for jury trial in its complaint. (Doc. 1, ¶ 41). J.C. Penney moves to enforce the parties' contractual jury waiver and to strike R&R's request for a jury trial. J.C. Penney acknowledges that it has the burden of proof to show that the waiver of jury trial was a knowing and voluntary waiver. J.C. Penney relies on the Declaration of Lataunia M. Boleware and a series of documents to show that R&R entered into the contract with full knowledge and understanding of the waiver of jury trial. R&R challenges this proof with the Declaration of Galen Bigham which essentially states that the waiver was not knowing and voluntary.

II.   Discussion

Federal law governs the enforcement of a jury waiver since it is procedural in nature. *Simler v. Conner*, 372 U.S. 221, 222 (1963) (holding federal law governs the right to a jury trial in diversity

actions). "It is elementary that the Seventh Amendment right to a jury is fundamental and that its protection can only be relinquished knowingly and intentionally." *Nat'l Equipment Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977). Because the right to jury trial is so fundamental, there is a presumption against waiver of the constitutional right to trial by jury. *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937). Parties may, however, contractually waive their right to a jury trial. *Coop. Fin. Ass'n. v. Garst*, 871 F. Supp. 1168, 1172 (N.D. Iowa 1995) (citing *Northwest Airlines, Inc. v. Air Line Pilots Ass'n Int'l*, 373 F.2d 136, 142 (8th Cir. 1967) (acceptance of a contract provision mandating dispute resolution in a forum where there is no entitlement to a jury trial is implied waiver of jury trial)). Contractual waivers of the right to jury trial are not illegal, do not violate public policy, and are regularly enforced. *Id*. While it does not appear the Eighth Circuit has ruled on the question, "courts within the circuit have generally held that the party attempting to enforce the waiver has the burden of proving the waiver is knowing and voluntary." *Westgate GV at the Woods, LLC v. Dickson*, 2010 U.S. Dist. LEXIS 120950 at *5-6 (W.D. Mo. Nov. 15, 2010) (quotation omitted). This Court does not, however, need to resolve the issue of who bears the burden of proof, as the Court's finding that R&R knowingly and voluntary waived its jury right would be the same no matter which party bore the burden.

While it appears there is no Eighth Circuit authority on the factors to be considered in analyzing a waiver of jury trial, there are a large number of district court opinions that provide persuasive authority as to what should be considered in determining if a jury waiver is knowing and voluntary. Courts have considered "negotiations between the parties concerning the waiver provision, the conspicuousness of the provision in the contract, the relative bargaining power of the parties, the business acumen of the party opposing the waiver, and whether counsel for the party

opposing waiver had an opportunity to review the agreement." *Trail Dr., LLC v. Silver Hill Fin., LLC*, 2012 U.S. Dist. LEXIS 35550 at *4-5 (E.D. Ark. Mar. 16, 2012).  Other relevant considerations are "whether the waiver provision is on a standardized form agreement or newly-drafted document, in fine print or in large or bold print, set off in a paragraph of its own, in a take-it-or-leave it or negotiated contract, and the length of the contract . . . and whether there was an opportunity to review all the terms of the contract and whether the waiving party did so." *Garst*, 871 F. Supp. at 1172.

R&R first argues that the Agreement and the SOW are separate agreements, and that the SOW, which does not contain a waiver of jury trial, governs the rights of the parties.  The Court disagrees.  J.C. Penney initiated the Project by asking potential suppliers to respond to the RFP, which included the contractual requirements for the Project.  The RFP specified the contract approach and the contract version for the Project.  (Doc. 30, Exh. C).  R&R responded to sections 2.2 and 2.3 of the RFP as follows:

> **2.2    Contract Approach**
> *- JCP and Supplier will negotiate an Agreement including general terms and conditions ("Ts&Cs") that govern the overall business relationship, and schedules that govern such things as technical specifications, project management, pricing, training, warranty and post-warranty maintenance, etc.*
> *R&R Solutions acknowledges and accepts this portion of the RFP.*
>
> **2.3    Contract Version**
> *- JCP's current [Master Agreement for Products and Services] is an attachment to this RFP.  As provided in Section 1.9, Bidder must provide comment to such Agreement.  Bidder's comments to the Agreement in no  way limit JCP's right to negotiate.  If the winning Bidder has a current existing Agreement with JCP, JCP may negotiate with such Bidder an Addendum to such Agreement covering the provisions of the current attached Agreement and the unique requirements of this project.*
> *R&R Solutions acknowledges and accepts this portion of the RFP.*

*Id.* (brackets in original). The RFP clearly contemplated—and R&R acknowledged—that J.C. Penney would negotiate with the successful bidder both a general Agreement and more specific schedule(s) that would together govern the parties' relationship regarding the Project. Article 37.1 of the Agreement attached to the RFP, and ultimately executed by J.C. Penney and R&R, provides that "all documents between the parties hereto executed subsequent to the date of this Agreement . . . for the purchase and sale of Products and Services shall be deemed to include and shall be governed by the terms and conditions of this Agreement except as the parties may otherwise agree in a duly executed writing." (Doc. 9-1, p. 12). Article 3 of the Agreement also provides that "Supplier's bid response, if applicable, or other written price quotation is attached hereto as Schedule A and incorporated herein as if set forth in full." *Id.* at p. 2. The RFP and Agreement make it abundantly clear that there would be a series of documents that would comprise the contract between the parties.

The SOW is titled as "Schedule A" to the Agreement, as was contemplated by Article 3 of the Agreement. (Doc. 10-4, p.2). The terms of the SOW recognize that the SOW is "executed and delivered pursuant to the Master Purchase Agreement" by and between J.C. Penney and R&R. *Id.* at p. 4. The SOW then states that "[a]ny ambiguity or inconsistency between or among the terms of the SOW and the Master Agreement shall be resolved by giving priority and precedence in the following order: (a) Master Agreement (b) Statement of Work (SOW)." *Id.* The Agreement and SOW together form the contract governing the relationship between J.C. Penney and R&R on the Project, and both parties are bound by the terms of the two documents.

R&R argues that the SOW contains a provision stating that "[t]his SOW to the Agreement contains the terms and conditions upon which R&R agrees to provide services to JCPenney for the

Network Refresh Project and supersedes any previously executed agreements associated with these Services," (Doc. 10-4, p. 4), which means that the terms of the SOW supersede the terms of the Agreement, including the jury waiver provision. Reading that provision in context, however, makes clear that the SOW was intended to supplement, not supersede, the Agreement. The provision cited by R&R means only that any prior agreements (lower-case "a") associated with the services provided by R&R would be superseded. The provision itself identifies the SOW in relation to the Agreement (capital "A") by stating "[t]his SOW to the Agreement . . ." *Id*. Further, given the context provided by the Agreement and the other provisions of the SOW, cited by the Court above, the Court cannot find that the SOW was intended to, or did, supersede the terms of the Agreement.

As to whether R&R knowingly and voluntarily waived its right to a jury trial, J.C. Penney produced a number of email communications between the parties to show that R&R made a knowing and voluntary waiver. As noted above, R&R unambiguously accepted and acknowledged the provisions of the RFP setting forth the Contract Approach and the Contract Version, including the provision stating that the Bidder must provide comment to the Master Agreement for Products and Services attached to the RFP. After J.C. Penney selected R&R for the Project, the parties began their negotiations and discussions, culminating in the execution of the Agreement and the SOW. In line with the expectations set forth in the RFP, R&R made comments on the Master Agreement. In returning the redlined contract to J.C. Penney, R&R stated "[a]ttached is the MSA with the accepted changes. The only area that we still have contention is the insurance requirements." (Doc. 30, Exh. G). R&R's requested modifications regarding the insurance requirements were ultimately accepted by J.C. Penney. (Doc. 30, Exh. I). During the negotiations period, there was no discussion about the jury waiver provision. The emails between the parties makes clear that R&R not only had an

opportunity to review the Agreement, but that R&R did review the Agreement and negotiated modifications in its favor. During this time period, R&R could have negotiated regarding the jury waiver provision and certainly had sufficient opportunity to have the Agreement reviewed by outside counsel. R&R failed to do so.

R&R contends that there was no equal bargaining position between the parties. In support of its argument, R&R's affiant states that R&R's revenue was one quarter of one percent of J.C. Penney's revenue, and that J.C. Penney was therefore in a superior bargaining position because it was a much larger company. R&R's affiant further states that J.C. Penney is more sophisticated than R&R, and that R&R trusted J.C. Penney to act in good faith and pay its bills. J.C. Penney's affiant, in showing that R&R understood the contract terms, stated: "[a]t no time did Mr. Bigham, Mr. Russell, or anyone else at R&R express any concern or confusion about any of the provisions of the draft Agreement other than those they changed or commented on in their redlined drafts." (Doc. 30, Appendix 1).

R&R is not an unsophisticated company. Its affiant states that R&R was sophisticated enough to provide the services needed for the Project. In addition, in responding to the RFP, R&R touted its experience in providing "network refreshes" for Abercombie and Fitch, Best Buy, and McDonalds. (Doc. 30, Exh. B). The fact that R&R chose not to employ outside counsel to review a $5 million contract does not show that R&R was taken advantage of by J.C. Penney. While J.C. Penney may be a large publicly traded company, it needed the expertise of a small company that had the specialized knowledge necessary to complete the Project. Just because R&R was a smaller company does not mean it could not negotiate terms favorable to the company, particularly with its specialized knowledge of "network refresh" projects. The disparity in unequal bargaining positions

is not all that significant, especially since J.C. Penney gave R&R the opportunity to comment and negotiate the contract. The agents representing R&R during the negotiations with J.C. Penney were able to successfully negotiate modifications to the Agreement in their favor, and the communications between the parties reveal no evidence of either overreaching by J.C. Penney or lack of sophistication of R&R. Rather, the R&R agents clearly had the business acumen necessary to negotiate on behalf of R&R regarding the Project.

Although the Agreement is based on a form contract, J.C. Penney gave R&R the opportunity to comment and negotiate any of the provisions of the Agreement. There is no requirement that parties must re-invent the wheel for each agreement that contains a jury waiver provision. The waiver of jury trial provision was not buried in fine print nor hidden in the middle of a paragraph. Rather, it was conspicuously set forth in the only provision in the entire 12-page Agreement that was set off in all capital letters at the end of a paragraph.

Having weighed the factors relevant to this case, the Court finds that R&R knowingly and voluntarily waived its right to a trial by jury when it executed the Agreement.

**III.   Conclusion**

For all of the above reasons, IT IS ORDERED that Defendant J.C. Penney's motion to enforce contractual jury waiver and to strike Plaintiff's request for jury trial (Doc. 18) is GRANTED. R&R's jury demand is STRICKEN, and this case will be reset for bench trial.

IT IS SO ORDERED this 17th day of July, 2013.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE